Costas and Wife, Respondents, v. City of Fond du Lac,
    Appellant.
Costas Enterprises, Inc., v. Same, Appellant.

*June 2—June 30, 1964.*

For the appellant there was a brief and oral argument by *Henry B. Buslee,* city attorney.

For the respondents there was a brief by *Worthing & Schneider,* attorneys, and *Edgarton & Hobbs* of counsel, all of Fond du Lac, and oral argument by *Kenneth E. Worthing* and *Neil Hobbs.*

HALLOWS, J.   The defendant claims it has not created a nuisance by the operation of its sewage-disposal plant; the plaintiffs have suffered no irreparable injury; the condition of the injunction is impossible of performance; and the court may not direct the details and the manner in which a nuisance is to be abated.   Because of the agreement of the parties concerning the finality and quantity of the proof, the decision of the court must be tested by the rules applicable to a final judgment.

The city of Fond du Lac since 1913 has operated a sewage-disposal plant in the north end of the city not far from Lake Winnebago.   The plaintiffs are owners of valuable real estate located a short distance south and somewhat to the east of the sewage-disposal plant.   Plaintiffs' property consists of an outdoor movie theater and an outdoor restaurant; a large motel with an outdoor swimming pool is in the process of being constructed.   Construction of this motel was undertaken upon the assurances the offensive odors emanating from the sewage-disposal plant would be corrected.

For some years and more specifically since 1956 or 1957, the problem of obnoxious and offensive odors from the sewage-disposal plant has existed.   It is established by the evidence that these strong and obnoxious odors, developed at the plant, were carried by the wind over the plaintiffs' premises and over a large part of the city.   There is some testimony the odors were noticeable as far as two miles out in Lake Winnebago.   The odors have made life extremely annoying and unbearable to people subjected to them and particularly the evidence shows the plaintiffs' business, customers, and employees were affected by the odors.   Plain-

tiffs' theater is subject to a lease which permits the lessee during the term of the lease to purchase the premises at its then market value.

In 1928 the city of Fond du Lac provided sanitary sewage treatment at its plant by constructing a sludge-digesting system. In 1950 a secondary treatment of sewage was provided but the old sludge digesters were not replaced. Because of the many complaints of the odors, the city in 1956 and 1957 experimented with the use of chemicals and other methods of odor control. Also in 1957 and again in 1959 the city had extensive surveys or studies made of the sewage-disposal plant. There were several causes of the odors but the primary one shown by both reports was the condition of the old sludge digesters. In 1959 a chlorination building was added for the treatment of final effluent before its release into the lake and more sludge beds were added and in 1963 a new screening building was placed in operation. However, the city up to the time of the hearing had not constructed new digesters.

A request for an appropriation for such digesters was included in the 1960 budget for the superintendent of the sewage-disposal plant. This item was not approved and the superintendent was informed not to repeat a request when an item had been requested and disallowed. There was testimony the digesters in 1961 created an explosion hazard and the fire department for a lengthy period of time was present at least twice a day to help reduce the safety hazard.

The city's contention that it is not causing a nuisance in the operation of its sewage-disposal plant can hardly be taken seriously. The argument, in effect, is that the nuisance, if any, is a public nuisance and not a private one as to the plaintiffs and, therefore, the plaintiffs have no cause of action. A nuisance may be both public and private in character. *Mitchell Realty Co. v. West Allis* (1924), 184 Wis. 352, 199 N. W. 390; Restatement, 4 Torts, ch. 40,

p. 217. A public nuisance which causes a particular injury to an individual different in kind and degree from that suffered by the public constitutes a private nuisance. Such injury is usually a material and unreasonable impairment of the right of enjoyment or the individual's right to the reasonable use of his property or the impairment of its value. *Stadler v. Milwaukee* (1874), 34 Wis. 98; *Schneider v. Fromm Laboratories* (1952), 262 Wis. 21, 53 N. W. (2d) 737.[1] This concept is expressed in sec. 280.01, Stats., by providing any person may maintain an action to recover damages for or to abate a private nuisance and any person, county, city, village, or town, may maintain an action to recover damages or to abate a public nuisance from which injuries peculiar to the complainant are suffered.

A private nuisance to an individual may also be a private nuisance to other individuals in their capacity other than as members of the public. The test is not the number of persons injured but the character of the injury and of the right impinged upon. One may be especially affected although others are similarly affected. *Anstee v. Monroe Light & Fuel Co.* (1920), 171 Wis. 291, 177 N. W. 26. Conversely, the fact the nuisance may or may not be enjoined as a public nuisance has no effect upon the right to abate a private nuisance.

The city contends the plaintiffs had not been injured in relation to their property because they have not lost money in their business and point to an advertisement of the outdoor restaurant in the daily paper thanking the public for a most successful season in 1963. There is no requirement the plaintiffs must go broke in their business in order to establish irreparable damages as a ground for abating a

[1] Under some circumstances where there is no injury to an interest in land a private cause of action may arise which is not classified as a private nuisance. Restatement, 4 Torts, ch. 40, p. 217.

nuisance. If the damages cannot be adequately compensated in money or are impossible of determination, an injunction is the appropriate relief to abate a nuisance unless there are other intervening considerations which require the denial of the injunctional relief or at least its delay. The court's finding that the plaintiffs were substantially injured in their use and enjoyment of their property and that the value of the property was affected is not against the great weight and clear preponderance of the evidence and will not be disturbed.

Relying on *Hasslinger v. Hartland* (1940), 234 Wis. 201, 290 N. W. 647, the defendant contends the nuisance was caused by the operation of the plant approved by a state agency and, therefore, was not actionable. In *Hasslinger* it is observed but not held (p. 207), "It may be that if the claim of the adjoining landowner is that the manner of operation is such as to constitute a nuisance, the fact that the plant was built according to specifications of the state board of health and is being operated in accordance with their orders and regulations may conclusively establish that there is no nuisance arising out of design or operation of the plant." This misleading language is overruled because of the implication that operation of the sewage-disposal plant in accordance with specifications and orders and regulations of the state board of health cannot constitute a nuisance.

This court does not subscribe to the doctrine that the state board of health by virtue of sec. 144.03, Stats., is given exclusive jurisdiction over the determination of nuisance so as to foreclose a judicial determination of whether the operation of a sewage-disposal plant results in creating a nuisance. This doctrine as expounded in *Robinson Brick Co. v. Luthi* (1946), 115 Colo. 106, 169 Pac. (2d) 171, 166 A. L. R. 655, and applied to a zoning ordinance results in a legislative pre-emption of the public-nuisance field and allows only damages when such public nuisances also con-

stitute a private nuisance. In *Hasslinger* we held the approval by the state board of health of the plans which involved the location of the sewage-disposal plant did not foreclose a judicial determination of whether the plant was a nuisance by reason of its location; the same may be said of the method of its operation. As early as 1901 in *Winchell v. Waukesha,* 110 Wis. 101, 85 N. W. 668, we pointed out the great weight of the authorities, both American and English, supported the view that legislative authority to install a sewer system carried no implication of authority to create or maintain a nuisance and did not matter whether such nuisance resulted from negligence or from the plan adopted.

The approval of the method of operation of the sewage-disposal plant is pertinent not to the existence of the nuisance but to the issue of whether it is feasible or practicable to give injunctional relief for the nuisance. On the same basis we consider the doctrine of "coming to the nuisance" as being properly an element in the consideration of the issue of abatement and not the existence of the nuisance. See 39 Am. Jur., Nuisances, p. 472, sec. 197; dissent in *Hartung v. Milwaukee County* (1957), 2 Wis. (2d) 269, 86 N. W. (2d) 475, 87 N. W. (2d) 799. Before the city can invoke the doctrine it must show it has used all reasonable means to prevent the nuisance. This the city has not done.

It is contended the trial court has imposed an impossible condition upon the city. This argument centers upon the fact the order enjoins the city absolutely after June 15th from permitting gases to escape from the sewage-disposal plant without deodorizing and purifying them so as to avoid the creation of a nuisance. The city claims it is impossible to operate the plant in such a manner by June 15th. The city was given approximately six months to make preparations to abate the nuisance. Attached to the back of the order

was a memorandum in which the court stated the order contemplated the city would attempt to comply in a *bona fide* way with the order and take immediate steps to place the plant in a businesslike working and operating condition and to deodorize and purify gases by the use of in-plant chlorination and of deodorizing chemicals. The court stated it recognized that 100 percent success might not always be obtainable but such efforts on the part of the city would be a basis for the city's temporarily being relieved from the strict compliance with the order. The order also contemplated the city would proceed with all reasonable speed in the preparing of plans and specifications for the building of new digesters and an application for financial aid from the federal government would be made at the earliest time on the basis an emergency existed. The court stated that a period of two years for the building and completing of the new digesters as contemplated by the city was unreasonable.

By this manner of enjoining the city and although the injunction is absolute in form, the city is not required to do the impossible. The city has not shown that to maintain the plant in a businesslike working and operating condition is' impossible or that the use of in-plant chlorination and the use of deodorizing chemicals is likewise impossible. The position of the defendant city is it should not be hurried or nudged along in abating this nuisance because it has existed so long now there is no need to hurry and the city will eventually take care of the problem. Essentially, the attitude is that the city because it is a city is not subject to the law. It is quite apparent from the record and so believed by the trial court that the city was not inclined to take the nuisance seriously or to do much about it. The reasons advanced for the delay in solving this problem by the city officials did not justify, in the trial court's opinion, the city's inaction. We cannot say on the evidence presented the trial

court was in error in considering the city was dragging its feet in providing new digesters and in abating the nuisance. We approve the form of the order made by the trial court. It is substantially what was approved in *Briggson v. Viroqua* (1953), 264 Wis. 47, 58 N. W. (2d) 546, and in *Winchell v. Waukesha, supra.*

The city argues the order directs the manner in which it must abate the nuisance and this a court of equity cannot do. We consider both points without merit. Generally the means whereby the nuisance is to be abated is left to the direction of the defendant tort-feasor. If the means by which the defendant may abate the nuisance is immaterial and the court is looking solely to the end result, it has been said that the means of abating the nuisance is of no concern of the court. *Thomas v. Clear Lake* (1955), 270 Wis. 630, 72 N. W. (2d) 541; *Behnisch v. Cedarburg Dairy Co.* (1923), 180 Wis. 34, 192 N. W. 447. Normally in such cases there is no evidence that any particular method of abating the nuisance is important. However, there are situations in which the balancing of convenience or equities is attempted by the court and the decree does provide in detail how the nuisance shall be abated or partially controlled. It is recognized the court may require the defendant to adopt methods and appliances where their adoption will avoid the conditions complained of. 39 Am. Jur., Nuisances, p. 443, sec. 172, Form and Scope of Injunction. The issue of whether the form of the decree should be affirmative and mandatory in requiring specific acts to abate the nuisance or should be prohibitive is not a question of the court's powers but whether a need exists for the exercise of equitable power in requiring affirmative acts to reach a desired result. Many prohibitory orders require only desisting for compliance but when a nuisance results from the omission of an act the

prohibitory form of the order necessarily requires the doing, in fact, of an act.

If, for sake of argument, the trial court should not on these facts order the manner in which the city must abate the nuisance, we do not find the court has done so. Any act which will abate the nuisance will comply with the order. The memorandum is not an order requiring the performance of the acts therein contemplated by the court. The performance of such methods of abating the nuisance is a condition or as the court states a basis for relief if such methods are tried and *bona fide* performance does not eliminate the nuisance.

The order is not broader, and should not be, than necessary to give the plaintiffs the relief to which they are entitled. We do not condemn its manner of coercion. It is the very nature of an injunction to be coercive. While the injunction may fit the facts snugly and be embarrassing to the city officials, no reason appears why it is unjust or how the city will be harmed or why the city should be relieved from showing good faith in respecting the private rights of its citizens.

*By the Court.*—Order affirmed.