MILLER BRANDS-MILWAUKEE, INC., a Wisconsin Corporation, Plaintiff-Respondent-Petitioner,

v.

Karen A. CASE, Secretary of the Wisconsin Department of Revenue and all Department Agents and Employees, Defendants-Appellants.

Supreme Court

*No. 89-0984. Argued April 23, 1991.—Decided June 11, 1991.*

(Also reported in 470 N.W.2d 290.)

For the plaintiff-respondent-petitioner there were briefs by *James M. Shellow, Robert R. Henak* and *Shellow, Shellow & Glynn, S.C.,* Milwaukee and oral argument by *James M. Shellow.*

For the defendant-appellants the cause was argued by *Gerald S. Wilcox,* assistant attorney general with whom on the brief was *Donald J. Hanaway,* attorney general.

Amicus curiae brief was. filed by *Howard S. Goldman* and *Tomlinson, Gillman, Travers, Gregg & Kravat, S.C.,* Madison for Wisconsin Wholesale Beer Distributors Association, Inc.

Amicus curiae brief was filed by *Edwin J. Hughes, Gila Shoshany* and *Stafford, Rosenbaum, Rieser & Hansen,* Madison for Blue Ribbon Brands, Inc., Henricks Beverage, Inc., Jed's Distributing Co., LaCrosse Distributing Co., Midstate Distributors Corp., Pehler Bros., Quality Beverages of Wisconsin, Reinerio Beverages, Spooner Bottling Works, Stanley's Beer Depot, Vavruska Distributing and Zastrow the Beer Man.

Amicus curiae brief was filed by *James R. Sommers* and *Hunter & Sommers,* Waukesha for Beloit Beverage Company, Better Brands Distributing Co. and Domanik Sales Company.

Amicus curiae brief was filed by *Thomas Armstrong, Michael H. Schaalman, Jeffrey A. Brauch* and *Quarles & Brady,* of counsel, *Anne L. Noyes* and *Miller Brewing Company,* Milwaukee, of counsel, *Walter R. Stewart* and *Stewart Law Office,* Madison for Miller Brewing Company, United Cerebral Palsy of Southeastern Wisconsin, Inc. and Wisconsin Restaurant Association.

Amicus curiae brief was filed by *Pamela H. Schaefer* and *Cook & Franke,* Milwaukee, of counsel, *Scott E. Flick* and *Howrey & Simon,* Washington, D.C. and *Shelley Sieveking* and *Anheuser-Busch,* St. Louis, Missouri, for Anheuser-Busch, Inc.

DAY, J.   This case is before the court on a grant of a petition for review by Miller Brands-Milwaukee, Inc. (Miller Brands) of a court of appeals decision. *Miller Brands-Milwaukee v. Case,* 156 Wis. 2d 800, 457 N.W.2d 896 (Ct. App. 1990). The majority of the court of appeals (Eich, C.J., dissenting) reversed a summary judgment of the circuit court for Dane county, the Honorable Susan Steingass, presiding, which declared that "trade spending" as defined by Miller Brands in its complaint, and as modified by the circuit court in its judgment, i.e.,—purchasing drinks for customers of Class "B" licensees by employees of Miller Brands, does not violate Wisconsin's tied-house law, sec. 125.33(1)(a), Stats. 1987–88.[1]

Miller Brands had brought a declaratory judgment action[2] pursuant to sec. 806.04, Stats. 1987–88[3] request-

---

[1]Section 125.33(1)(a), Stats. 1987–88 provides:

**Restrictions on dealing between brewers, wholesalers and retailers.   (1)** FURNISHING THINGS OF VALUE (a) Except as provided in this section, s. 125.28(2) or 125.31(1), no brewer or wholesaler may furnish, give, lend, lease or sell any furniture, fixtures, fittings, equipment, money or other thing of value to any campus or Class "B" licensee or permittee, or to any person for the use, benefit or relief of any campus or Class "B" licensee or permittee, or guarantee the repayment of any loan or the fulfillment of any financial obligation of any campus or Class "B" licensee or permittee. Such actions may not be taken by the brewer or wholesaler directly or indirectly, or through a subsidiary or affiliate corporation, or by any officer, director, stockholder or partner thereof.

[2]Consistent with the court of appeals' opinion, we shall refer

ing the court to declare that sec. 125.33(1)(a), Stats. is not violated by a wholesaler's practice of trade spending on the premises of a Class "B" retail licensee, or, in the alternative, that sec. 125.33(1)(a), is unconstitutional.

Ruling on Miller Brands' motion for summary judgment, the circuit court held that Miller Brands' trade spending is not a violation of sec. 125.33(1)(a), Stats. The court of appeals reversed, holding that (1) the issue before it was ripe for declaratory judgment, (2) section 125.33(1)(a) is not unconstitutional, and (3) trade spending, regardless of the scope of the wholesaler's activities, violates sec. 125.33(1)(a).

The issues before us are whether Miller Brands is entitled to summary judgment on its declaratory judgment action, and whether sec. 125.33(1)(a), Stats. is unconstitutional. We hold that the issue presented to the circuit court was not ripe for declaratory judgment, and therefore Miller Brands' motion for summary judgment should have been denied and the action dismissed. Because of our holding on the first issue, we do not reach the second issue. The facts leading up to this dispute are

---

to the defendants collectively as the Department of Revenue (DOR) despite the fact that the action was actually brought against Karen Case, secretary of the DOR, and the DOR's agents and employees.

[3]Section 806.04(2), Stats. 1987–88, provides:

**Uniform declaratory judgments act . . .. (2)** POWER TO CONSTRUE, ETC. Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder. No party shall be denied the right to have declared the validity of any statute or municipal ordinance by virtue of the fact that the party holds a license or permit under such statutes or ordinances.

uncontroverted. By letter of January 10, 1986, the Wisconsin Department of Revenue (DOR), informed the Wisconsin Wholesale Beer Distributors Association that Miller Brands' trade spending violates the tied-house provisions of sec. 125.33(1)(a). Miller Brands is a Wisconsin corporation licensed to sell fermented malt beverages at wholesale within the State of Wisconsin. It sells beer and other products of the Miller Brewing Company to retail customers who hold Class "B" licenses or permits issued by the State of Wisconsin.

On February 24, 1988, an agent for the DOR advised counsel for Miller Brands that the DOR would be conducting an investigation of Miller Brands' possible violation of sec. 125.33(1)(a), Stats. The agent requested the books, papers and records of Miller Brands to determine whether it had, in fact, violated the tied-house laws. Counsel for Miller Brands refused to allow the agent to inspect Miller Brands' books and records.

On February 25, 1988, Miller Brands filed a complaint together with a motion for a temporary injunction requesting the DOR be enjoined from attempting to obtain Miller Brands' books and records. The DOR stipulated to granting the injunction. Whether the DOR had authority to obtain records is not before us. On May 20, 1988, Miller Brands filed an amended complaint seeking a declaratory judgment that trade spending does not violate sec. 125.33(1)(a), Stats. or, in the alternative, that the application of the statute is unconstitutional.

On June 7, 1988, Miller Brands filed a motion for summary judgment. In its affidavit in support of the motion, Miller Brands provided the following definition of trade spending:

> " 'Trade spending' " consists of the practice whereby sales people or other employees of a beer wholesaler purchase beverages for customers at Class " 'B' "

licensed retail premises. The price paid for the beverages is the price charged to the public by the retailer. Although customers are encouraged to sample products distributed by the wholesaler, the offer to purchase is not withdrawn if the customer chooses a different drink.

The purpose of trade spending is to convince the customers of the licensed retail premises to sample products distributed by the wholesaler and to switch their preference to the wholesaler's brand.

The practice of trade spending for such advertising purposes is common throughout the beer industry.

A wholesaler's trade spending on retail premises promotes business competition and does not subject the retailer to control by the wholesaler.

These "facts," which also are identically reproduced in Miller Brands' amended complaint, were the sole "facts" provided to the circuit court.

Also on June 7, 1988, the DOR filed a motion to dismiss the complaint on the grounds that the case was not ripe for adjudication because there were no facts upon which to base a judgment and no action had been threatened or taken. In addition, the DOR asserted that a declaratory judgment regarding the constitutionality of trade spending would be inappropriate absent an examination of the specific facts of this case.

The DOR filed a brief in opposition to Miller Brands' motion for summary judgment, but did not supply the court with a supporting affidavit. In its brief, the DOR stated that it had no real information concerning the nature and purpose of Miller Brands' trade spending, because it had not been permitted to inspect Miller Brands' books, papers and records. It also stated that Miller Brands' general definition of trade spending, with

which it supplied the court, did not in any way deal specifically with Miller Brands' trade spending. The DOR also disputed the accuracy of the definition.

After hearing argument on each party's motions, the circuit court granted Miller Brands' motion for summary judgment. It found that sec. 125.33(1)(a), Stats. is not unconstitutional, and that the following practice by Miller Brands is not a violation of sec. 125.33(1)(a):

> The purchase of drinks by sales employees or supervisory personnel of Miller Brands during regular and periodic calls upon Class " 'B' " licenses who are customers of Miller Brands, under the following conditions:
>
> **(a)** When the purchases are made during the retailers' normal business hours;
>
> **(b)** When employees of Miller Brands do not offer to purchase drinks upon the condition that the customer purchase only a beverage distributed by Miller Brands;
>
> **(c)** When employees of Miller Brands do not pay more for the drinks purchased than the retailer normally charges its customers for such drinks;
>
> **(d)** When employees of Miller Brands do not purchase drinks from retailers that sell only Miller Brands products;
>
> **(e)** When employees of Miller Brands do not have a set pattern of when they will be at a retailer such that the customers can predict in advance the dates on which drinks will be purchased for them; and
>
> **(f)** When the purchases are periodic and are not made with the specific intent to influence, control or coerce the retailer into purchasing Miller Brands

products.[4]

The DOR appealed, and the court of appeals reversed. The majority of the court of appeals held that the factual allegations contained in Miller Brands' affidavit in support of its motion for summary judgment were sufficient, and that declaratory relief was proper. *Miller Brands,* 156 Wis. 2d at 805.[5] In addition, the

---

[4]We note that at the oral argument in the circuit court the following took place between the court and counsel for Miller Brands:

**THE COURT:** Are any of these bars, bars in which for example only your product is served on tap?

**MR. SHELLOW:** Probably, sure.

\* \* \*

**MR. SHELLOW:** The one thing that has come out of this colloquy, that I think is important, and I didn't think so at the time. And as the Court and Mr. Wilcox were engaging in their colloquy, the court kept coming back to, at least three or four times, came back to a question, well, how about places that only sell Miller Beer, or that only have Miller products? And I couldn't, as the court was asking the questions, divine what in the world, what difference that it made. Suddenly it occurred to me, of course, if they are already selling only Miller Products, then the purpose can't be advertising.

**THE COURT:** Right.

**MR. SHELLOW:** But if—had the court said that, I wouldn't have spent ten minutes sort of swirling it around in my head what the court was driving at, I agree with the court.

And I would ask that the injunction be limited and not to include—that it does not include the purchase of drinks at places that exclusively handle Miller Products, because that is clearly not advertising.

(Transcript of Proceedings, December 14, 1988, pp. 7, 53–54).

As a result, the court modified Miller Brands' definition of trade spending in its Decision and Order.

[5]The court of appeals disregarded the following as either an allegation of ultimate fact or conclusion of law.

court held that trade spending violates sec. 125.33(1)(a), Stats., and that the statute survives Miller Brands' constitutional challenges. *Id.* at 805–806.

Judge Eich, in his dissent, agreed with the majority that the case was ripe for declaratory judgment and also agreed that sec. 125.33(1)(a), Stats. is not unconstitutional. *Id.* However, he was of the opinion that Miller Brands' activities did not violate the statute. *Id.*

■

In reviewing the grant of a motion for summary judgment, we are required to apply the standards set forth in sec. 802.08(2), Stats. 1987–88.[6] *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816

---

**h.** The purpose of trade spending is to convince the customers of the licensed retail premises to sample products distributed by the wholesaler and to switch their preference to the wholesaler's brand . . ..

**j.** A wholesaler's trade spending on retail premises promotes business competition and does not subject the retailer to control by the wholesaler.

**k.** A wholesaler's trade spending on retail premises does not violate Wis. Stat. sec. 125.33(1)(a).

*Miller Brands,* 156 Wis. 2d at 807.

[6]Section 802.08(2), Stats. 1987–88 provides:

**Summary judgment . . .. (2)** MOTION. The motion shall be served at least 20 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. Prior to a hearing on the motion, any party who was prohibited under s. 802.02(1m) from specifying the amount of money sought in the demand for judgment shall specify that amount to the court and to the other parties. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

(1987). First we must examine the pleadings to determine whether a claim for relief has been stated. If no proper claim has been stated, the inquiry ends, and the motion must be denied. *Id.* Miller Brands, in its complaint, has requested the court to render a declaratory judgment stating that trade spending, as it is defined in its complaint and affidavit, does not violate sec. 125.33(1)(a), Stats.

The facts or conditions which must exist in order for a court to grant declaratory relief are as follows:

> There must exist a justiciable controversy—that is to say:
>
> **(1)** A controversy in which a claim of right is asserted against one who has an interest in contesting it.
>
> **(2)** The controversy must be between persons whose interests are adverse.
>
> **(3)** The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest.
>
> **(4)** The issue involved in the controversy must be ripe for judicial determination.

*Loy v. Bunderson,* 107 Wis. 2d 400, 410, 320 N.W.2d 175 (1982) (citing Borchard, *Declaratory Judgments,* pp. 26-57). If all four factors are satisfied, the controversy is "justiciable," and it is proper for a court to entertain an action for declaratory judgment. *Id.*

The fourth component of justiciability, ripeness, requires that the facts be sufficiently developed to avoid courts entangling themselves in abstract disagreements. *Id.* at 412, 414. While this does not mean that all adjudi-

catory facts must be resolved as a prerequisite to a declaratory judgment, facts must not be "so contingent and uncertain." *Id.* at 412.

The DOR argued to the circuit court that the case was not ripe for adjudication because no action had been threatened or taken against Miller Brands, and the "facts" provided the court were merely hypothetical. We agree that the case was not ripe for adjudication on the hypothetical""facts" on which Miller based its action.

In *Tooley v. O'Connell,* 77 Wis. 2d 422, 253 N.W.2d 335 (1977), the plaintiff brought an action requesting the court to declare a statute which authorized collection and distribution of property taxes for the financing of public schools unconstitutional. *Id.* at 428. This court held that the issue was ripe for determination because the tax had already been levied and collected. *Id.* at 440. The constitutional violations, if any, had already occurred, and no future events were necessary to enlarge upon the circumstances of the controversy. *Id.*

*Tooley* does not stand for the proposition that a prosecution must be pending in order for an action to be ripe for a declaratory judgment. Otherwise the purpose of the declaratory action would be defeated. *See Lister v. Board of Regents,* 72 Wis. 2d 282, 307, 240 N.W.2d 610 (1976). As this court stated in *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 674, 239 N.W.2d 313 (1976), "[p]otential defendants may seek a construction of a statute or a test of its constitutional validity without subjecting themselves to forfeitures or prosecution." Yet under the ripeness element of justiciability, "if another act can be taken to remove contingencies and doubt, it should be taken to make the action proper. Factual circumstances determine whether this factor is satisfied." *Id.*

In *Lynch,* the facts were stipulated. *Id.* at 675. It was certain that the respondents and four senators had held private meetings, and that no notice was given pursuant to the open meetings law. *Id.* at 665. The department of justice was aware of the meetings but did not prosecute. *Id.* at 667. The court in *Lynch* stated that "[a]cts have been taken, and the only contingency is prosecution . . .. The 'ripeness' criterion is fulfilled." *Id.* Unlike the facts in *Lynch,* the "facts" provided by Miller Brands may or may not have occurred. While prosecution is a contingency, so are the facts.

This court addressed "factual circumstances" which were lacking in *Waukesha Memorial Hospital v. Baird,* 45 Wis. 2d 629, 173 N.W.2d 700 (1970). In that case, the medical staff of Waukesha Memorial Hospital brought an action against representative police officers in Waukesha county. The plaintiffs requested a declaratory judgment stating that the Waukesha county law enforcement agencies and officers did not have the right to order physicians and their employees to take blood specimens to determine a person's blood alcohol level. *Id.* at 631-32. The complaint stated that a police officer had threatened prosecution of a doctor if he did not take a blood specimen. *Id.*

In *Waukesha,* the court held that there were not enough facts to resolve the issue under the statute governing refusing to aid an officer (sec. 946.40, Stats.). *Id.* at 641. "Neither the statute nor the facts that might trigger an interpretation of the statute are before the court." *Id.* "It is clear that what the plaintiffs ask is for an advisory opinion in which they wish the court to assume various hypothetical states of fact and determine their liability prospectively under each of these states of fact." *Id.* at 643.

It is equally clear that this is what Miller Brands had asked the circuit court to do in the case before us. Miller Brands supplied the court with a definition of trade spending, and asked the court to rule that if it stays within this definition, it will not be in violation of sec. 125.33(1)(a), Stats. Such a ruling would amount to an advisory opinion. This is demonstrated by the circuit court's modification of Miller Brands' definition of trade spending.

The "facts" which Miller Brands has supplied the court are insufficient for a declaratory judgment. In fact, the DOR states it does not know what the facts are. That is, it is uncertain whether Miller Brands activities are potentially in violation of the tied-house law because the DOR has been unable to examine Miller Brands' books and records.

The actual facts of this case, as they relate to Miller Brands, are uncertain. What Miller Brands has done is create a definition of trade spending and ask the court, "Is it legal to do this?" We agree with this court's statement in *Waukesha* and apply it to the case before us: "the facts of this case are too shifting and nebulous for the invocation of the remedy of declaratory judgment." *Id.* at 643–644. For this reason we reverse the decision of the court of appeals and hold that summary judgment on the declaratory judgment action was not proper.

*By the Court.*—The decision of the court of appeals is reversed, and the case is remanded to the circuit court, with directions to dismiss the complaint.